[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-13605

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

PIERRE CORTEZ HARDAWAY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 6:13-cr-00002-JRH-BKE-1

_____

Before ROSENBAUM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Pierre Cortez Hardaway appeals his 24-month sentence imposed upon revocation of his supervised release. He argues the district court abused its discretion because the sentence was based on an alleged violation that the government failed to prove. After careful review, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2013, Hardaway pleaded guilty to possession of a firearm by a convicted felon and he was sentenced to 114 months' imprisonment followed by a 3-year term of supervised release, which began on April 19, 2021. On June 6, 2023—while Hardaway was serving his supervised release—the probation officer petitioned the district court for a warrant and requested Hardaway's supervised release be revoked due to alleged violations of the supervision conditions. Two of those conditions are relevant here: First, that he "not commit another federal, state, or local crime," and second, that he "not unlawfully possess a controlled substance."

The probation officer's petition was based on events that occurred on April 22, 2023, when police officer Bradley Simpson responded to reports of a dispute at an apartment complex in Newnan, Georgia. An on-site security officer relayed that a man—Hardaway—tried to force himself through the front door of a resident's apartment while she was inside. The resident was TeAnna

Williams, Hardaway's ex-girlfriend.  Officer Simpson found Hardaway in the front of the building and charged him with criminal trespass with property damage.

At some point while Officer Simpson was there, Williams and Hardaway argued over the keys to Hardaway's truck, which was parked outside the apartment, and "someone [threw them] across the front yard of the apartments."  Hardaway, Officer Simpson, and "several [others] walked around looking for the keys," but "[t]hey were never located."  Officer Simpson related that "[a]t first" Hardaway was "upset about the keys," but after they began searching for them Hardaway "was pretty adamant that [they] forget the truck and just go on to the jail."

But the apartment complex wanted Hardaway's truck removed from the property, so Officer Simpson and other officers helped prepare Hardaway's truck to be towed.  While doing so, the officers observed "a clear plastic bag in the driver's side of the rear floorboard that contained a green, leafy substance that appeared to be marijuana."  Officer Simpson obtained a warrant to search the truck, which revealed a pocket-sized digital scale with marijuana residue on it, in addition to the clear plastic bag of a green, leafy substance weighing 5.2 ounces.  Officer Simpson relied on his knowledge, training, and experience with the odor and appearance of the substance to determine that it was marijuana, and that it was well above the felony amount.  He charged Hardaway with felony possession of marijuana and possession of drug-related objects, and submitted the bag and scale for further lab testing.

The district court held a supervised release revocation hearing, even though the lab results for the contents of Hardaway's truck were still pending.  In addition to his testimony about the events on April 22, Officer Simpson testified he was familiar with Hardaway and the truck because Officer Simpson had been involved in previous traffic stops where the smell of marijuana was present in Hardaway's truck.  Monica Equere, Hardaway's fiancée, testified that the truck in which the marijuana was found was Hardaway's everyday truck.  And the district court considered the revocation report, which included Hardaway's verbal and written admission to ingesting marijuana in December 2022.

The district court found that the government "established by [a] preponderance of the evidence that on the night of April 22, 2023, . . . Hardaway committed another federal, state[,] or local crime in that he committed the crime of criminal trespass with property damage; possession of marijuana, 5.2 ounces; and possession of drug-related objects," in violation of the conditions of his supervised release.  The district court then adopted the guideline calculations in the revocation report and, "[b]ased on a Grade B violation with a criminal history category of VI[,] the recommended guideline range for imprisonment upon revocation [was] 21 to 27 months."  The district court revoked Hardaway's supervision and sentenced him to 24 months' imprisonment, which was the statutory maximum term.  This is Hardaway's appeal.

**STANDARD OF REVIEW**

"We review the district court's conclusion that [an] appellant violated the terms of his supervised release for abuse of discretion." *United States v. Copeland*, 20 F.3d 412, 413 (11th Cir. 1994). The district court's "findings of fact are binding on [us] unless clearly erroneous," *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993) (citation omitted), meaning that we are "left with a definite and firm conviction that a mistake has been committed," *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (citation omitted). "We review the sentence imposed upon the revocation of supervised release for reasonableness." *United States v. Velasquez Velasquez*, 524 F.3d 1248, 1252 (11th Cir. 2008).

**DISCUSSION**

Hardaway argues that the district court abused its discretion when it determined that he possessed marijuana and then, based on that determination, imposed the statutory maximum sentence of 24 months. We'll take each—his possession of marijuana and his sentence—in turn.

*Hardaway's Possession of Marijuana*

The identification of a controlled substance may be established by circumstantial evidence such as "lay experience based on familiarity through prior use, trading, or law enforcement" and "behavior characteristic of sales and use such as . . . weighing." *United States v. Harrell*, 737 F.2d 971, 978 (11th Cir. 1984). Additionally, "[i]dentification based on past use coupled with present

observation of the substance at hand will suffice to establish the illicit nature of a suspected substance." *Id.* at 978–79.

Here, Officer Simpson identified the marijuana by his "knowledge, training, and experience [with marijuana,] and the odor as well as the . . . way it looked." He testified it is "common to find scales in association with [distribution of] all types of illegal contraband," including marijuana, and that possessing one ounce of the drug makes it a felony—his scale on the scene indicated Hardaway had 5.2 ounces. Moreover, Officer Simpson was familiar with Hardaway and his truck because he had smelled marijuana in it during previous traffic stops; he smelled the same odor in the truck on April 22, 2023. Together, this circumstantial evidence—Officer Simpson's knowledge, training and experience; what he saw and smelled; the presence of the scale and the amount of marijuana consistent with illegal distribution; Hardaway's insistence that the officers leave his truck alone and take him to jail; the smell of marijuana in Hardaway's truck during traffic stops in the past; and Hardaway's admission to using marijuana on December 21, 2022—was sufficient to identify the substance as marijuana. *Id.* We certainly are not "left with a definite and firm conviction" that the district court erred in identifying it as such. *Rothenberg*, 610 F.3d at 624; *see also Harrell*, 737 F.2d at 978–79.

Hardaway contends that law enforcement officers in the field cannot distinguish between low-THC smokable hemp and marijuana. But "[t]he law is quite clear that the introduction of a chemical analysis of the substance is not essential to conviction."

23-13605                Opinion of the Court                7

*United States v. Zielie*, 734 F.2d 1447, 1456 (11th Cir. 1984); *accord United States v. Baggett*, 954 F.2d 674, 677 (11th Cir. 1992). And "[w]here a fact pattern gives rise to two reasonable and different constructions, the factfinder's choice between them cannot be clearly erroneous." *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012) (citation omitted). Here, the district court did not clearly err by determining the substance Officer Simpson identified was marijuana, even though the lab results were unavailable.

Nor did the district court err in determining that the marijuana was in Hardaway's possession. Possession of illicit drugs "may be actual or constructive, and the latter can be established by evidence showing ownership, dominion, or control over the contraband itself or the premises on which it is concealed." *United States v. Montes-Cardenas*, 746 F.2d 771, 778 (11th Cir. 1984) (citation omitted). Here, the truck where the marijuana was found was registered to Hardaway and was used by him as his daily vehicle. Officer Simpson had previously seen Hardaway driving this truck and was involved in prior traffic stops of the truck. The evidence was sufficient for the district court to conclude that Hardaway had constructive possession of the marijuana and scale. *Id.*

Hardaway argues that Williams had his keys just before the marijuana was found and could have planted it in his truck. But the government was not required to affirmatively debunk this theory. Even if a defendant's hypothesis is "supported by some modicum of evidence," the factfinder is "free to choose between or among the reasonable conclusions to be drawn from the evidence

presented." *See United States v. Williams*, 865 F.3d 1328, 1345–46 (11th Cir. 2017) (citation omitted). "[E]vidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *Harrell*, 737 F.2d at 979.

*Hardaway's Sentence*

Under 18 U.S.C. section 3583(e), "a district court may, upon finding by a preponderance of the evidence that a defendant has violated a condition of supervised release, revoke the term of supervised release and impose a term of imprisonment after considering [the] factors set forth in 18 U.S.C. [section] 3553(a)." *United States v. Sweeting*, 437 F.3d 1105, 1107 (11th Cir. 2006); *cf. United States v. Thompson*, 976 F.2d 1380, 1381 (11th Cir. 1992) (holding that a district court may sentence a defendant to the statutory maximum term that exceeds the guideline range upon revocation of supervised release if it is appropriate under the circumstances).

In *Sweeting*, we affirmed a 24-month sentence when the defendant "violated his supervised release by committing a controlled substance offense punishable by a term of imprisonment exceeding one year." 437 F.3d at 1107. We reasoned that the defendant's sentence "was within the applicable statutory maximum, the recommended [g]uideline range, and was reasonable in light of the evidence of his conduct while on supervised release." *Id.*

So too here. Under sentencing guideline section 7B1.1(a)(2), "conduct constituting [a] federal, state, or local offense punishable by a term of imprisonment exceeding one year"—such as Hardaway's felony possession of marijuana—is a Grade B violation.

Based on that Grade B violation and Hardaway's criminal history category of VI, the recommended guideline range upon revocation of supervised release was 21 to 27 months, U.S.S.G. § 7B1.4, and the statutory maximum prison term was 24 months, 18 U.S.C. §§ 3583(e)(3). Like in *Sweeting*, the district court here imposed a sentence "within the applicable statutory maximum [and] the recommended [g]uideline range," which was "reasonable in light of the evidence of his conduct while on supervised release." 437 F.3d at 1107.

**AFFIRMED**.